## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

Laboratory Charter School        :
       :     CIVIL ACTION NO.
     v.                    :
       :
A.L.L., by and through his Parent, A.L.    :
And A.L. in her own right           :
_____

## COMPLAINT

## INTRODUCTION AND PROCEDURAL BACKGROUND

1.    On January 30, 2024, the Student, by his parent and natural guardian, AL ("Parent"), filed a Due Process Complaint against his former LEA, the Laboratory Charter School ("Lab Charter" or the "School") claiming that the School did not provide Free Appropriate Public Education ("FAPE") during A.L.L. ("Student") his enrollment in Third Grade (2021-2022) and Fourth Grade (2022-2023), and applicable Extended School Year ("ESY") periods. Parent requested compensatory education credits for the alleged failure to provide FAPE.

2.    In response to the allegations made in the Complaint, at the two day hearing before the appointed Hearing before the Hearing Officer appointed by the Pennsylvania Office of Dispute Resolution,  Lab Charter introduced several exhibits and adopted those produced by the Parent, cross examined two witnesses produced by the Parent, and produced another witness who testified individually and collectively that the Student was promptly and adequately determined to be a student who required special education services that were thoroughly reviewed and adopted.

3.      All testimony and documentation presented during the hearing on the Complaint demonstrated that the Student was not denied FAPE in either year of his enrollment. Nevertheless, the appointed Hearing officer issued a Decision that the Laboratory Charter School had denied FAPE to the Student for the two years he matriculated at Lab Charter and awarded an unquantified number of Compensatory Education.[1] No request was made by the Parent for the payment of the attorney fees until the Parent filed a Complaint on September 19, 2024 and first sent that Complaint to counsel for the Student and Parent on September 20, 2024.

3,      Simply stated, it is respectfully urged that the credible evidence produced during the two days of hearings before the appointed Hearing Officer, Cheryl Cutrona, J.D., requires a finding that the Laboratory Charter School did not deny FAPE to the Student and the findings of the Hearing Officer must be overturned in all respects.

4.      The singular issue raised in this Complaint is: Did Laboratory Charter School violate the Student's right to a Free Appropriate Education within the meaning of the Individuals with Disabilities Education Act during the 2021-2022 and 2022-2023 school years and applicable ESY periods?

## STATEMENT OF APPLICABLE FACTS

### Pre-Matriculation and Background

5.      Prior to his matriculation at Lab Charter, ("Student") received early intervention services due to developmental delays in areas of cognitive and communication development. S-10, p. 4.

6       The Student also received programming for speech and language ("S/L") therapy,

---

[1] While the attached Decision was dated June 21, 2024, the decision was not transmitted to the parties until June 22, 2024, rendering this Complaint timely filed within the permitted 90-day appeal period.  See the emails from the Hearing Officer to the parties dated June 22, 2024, documenting the date that the appellate period first began.

occupational therapy ("OT"), and physical therapy ("PT").

7.     The Student attended Mastery Charter School – Clymer Campus ("Mastery Charter") for his Kindergarten school year (2018-2019).

8.     Mastery Charter conducted an evaluation and produced an Evaluation Report on June 1, 2018.

9.     The June 2018 Evaluation Report concluded that the Student qualified for special education under the disability category of Speech and Language Impairment.

10.    The Student was most recently eligible for special education services with a primary classification of Other Health Impairment and a secondary classification of a Specific Learning Disability, Speech and Language Impairment.

11.    The Student transferred to Lab Charter for his first-grade school year (2019-2020).

12.    On November 1, 2019, Lab Charter developed and implemented an IEP to provide the Student with appropriate programming.

13.    Parent only spoke with school personnel one time prior to November 1, 2019, and the extent of the conversation related to transportation.

14.     Parent did not object to any alleged deficiencies related to the Student's language present levels, goals, or specially designed instruction ("SDI") in the November 1, 2019, IEP.

15.     Parent did not object to any alleged deficiencies related to the Student's occupational therapy present levels, goals, or specially designed instruction ("SDI") in the November 1, 2019, IEP.

16.     Parent made no objections to any part of the November 1, 2019, IEP, including deficiencies related to the Sudenty's present levels, goals, or specially designed instruction ("SDI") in the November 1, 2019, IEP. N.T. p. 141, lines 19-25.

17.     Parent raised no concern with Lab Charter regarding dissatisfaction with the Student's grades and progress at the end of his first-grade year.

18.     There is no indication in the record that Parent raised any concerns regarding her dissatisfaction with Lab Charter's education of the Student throughout his matriculation at Lab Charter.

**Third Grade School Year (2021-2022)**

19.     Lab Charter provided an IEP prior to the Students's third-grade school year on May 20, 2021.

20.     Parent made no objections to any part of the May 20, 2021, IEP, nor did she object to any deficiencies related to the Student's language present levels, goals, or SDIs.

21.     Parent only spoke to Ms. Taylor, the Student's third-grade teacher, about his grades during report card conferences at the end of the school year.

22.     Lab Charter uses a multi-tiered system of support (MTSS) for all students, including general education students and those who receive special education.

23.     MTSS can be used to address behavioral or academic concerns with tier one interventions being used classroom-wide for the first six to eight weeks of the school year. .

24.     The second tier of interventions included adding an instructional aid to the classroom.

25.     Additionally, the school guidance counselor would lead small group sessions to focus on behavior concerns and social and emotional regulation.

25.     The Student was enrolled in the Extended School Year (ESY) program for his third-grade year, but without explanation to the school, he did not attend the program.

**Fourth Grade School Year (2022-2023)**

26.     After becoming aware of the Student's tendency to have difficulty with peer interactions and to elope because of those interactions, Lab Charter implemented a Safety Plan to address these behavior concerns.

27.     Lab Charter is a restorative practice school, meaning the school takes a holistic approach to assisting students with behaviors in a way that addresses their trauma and provides the student with a safe space to work through behaviors.

28.     Lab Charter completed an evaluation report on November 28, 2022.

29.     The school psychologist that completed the evaluation, Desiree Harris, called Parent to discuss the results of the Evaluation Report.

30.     Lab Charter subsequently drafted an IEP on December 11, 2022.

31.     Lab Charter drafted an amended IEP on January 19, 2023.

32.     Mr. Martin Ngegba, special education teacher, provided push-in learning support to the Student during the first half of his fourth-grade school year for both reading and math.

33.     Parent's contention that the Student had four different teachers during his fourth-grade year is baseless, there is no evidence from the record to support this claim.

34.     Furthermore, Michelle Chapman, Special Education Coordinator, admitted only that change in staff can make addressing behavior concerns more difficult, she expressed that Lab Charter was able to consistently address behavior concerns.

35.     All inconsistencies in staffing were related to a nation-wide teacher staffing shortage due to Covid-19 and were not indigenous to Lab Charter.

36.     By the end of his fourth-grade year, the Students grades all fell within average to above-average range, with his lowest grade in ELA at 75% and highest in music at 88%.

37.     Parent did not contact Lab Charter, whether in writing or in person, to discuss concerns relating to his fourth-grade report card.

38.     Michelle Chapman contacted the Student's Parent to inquire about transportation needs in order for the Student to attend ESY and his Parent declined transportation.

39.     The Student was again invited to attend the ESY program at the conclusion of his fourth-grade year but simply did not appear.

## Credibility Factors

40.     All of the incredibly credentialed Lab Charter school personnel spoke highly of the Student and demonstrated deep commitment to his success. However, despite clear love of

her son, the testimony of Parent regarding substantive elements of her claim were simply not

credible, inter alia:

a.      She had produced no substantive opinion or proof of Lab Charter's failure to include her in the Student's education academically or behaviorally.

b.      She had produced no substantive opinion or proof of Lab Charter's failure to address the Student's behavioral needs.

c.      She had presented no evidence or record of her son's behavior concerns.

d.      She had presented no substantive opinion or proof that Lab Charter did not allow her meaningful participation in the special education process.

e.      She had produced no substantive opinion nor presented proof that she made attempts to contact Lab Charter personnel to discuss any concerns regarding her son's education at Lab Charter.

## **LEGAL PRINCIPLES AND CONCLUSIONS OF LAW**

### **Burden of Proof**

41.     Generally speaking, the burden of proof consists of two elements: the burden of production and the burden of persuasion. At the outset, it is essential to recognize that the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005), *L.E. v. Ramsey Board of Education*, 435 F.3d 384, 392 (3d Cir. 2006).

42.     Accordingly, the burden of persuasion rests with the Parent, who requested this hearing, while the burden of production rests with the Charter School. In IDEA and in Section 504 disputes, the hearing officer applies a preponderance of proof standard. *Jaffess v. Council Rock School District*, 2006 EL 3097939 (E.D. Pa. October 26, 2006).

43.     The Parent must produce a quantity or quality of evidence that is greater than that produced by the Laboratory Charter School, the opposing party. *Comm. v. Williams*, 532 Pa. 265, 284-286 (1992).

44.     Simply stated in the present matter, the burden of persuasion rests upon the Parent, who filed the Complaint, to prove by a preponderance of the evidence that Lab Charter failed to offer and provide FAPE.

45.     As reflected in the statement of material facts above, it is respectfully asserted that Parent did not meet the requisite burden of proof required to support the claims made by her in any respect and her requests for a finding of a denial of FAPE. Parent had failed to establish that Lab Charter has substantially denied FAPE to the Student.  All evidence and proof from the record indicate that Lab Charter properly sought out the Student as a child with special education needs and the School provided programming for him, in both general education and special education settings. Lab Charter also provided Parent with the opportunity to participate in the decision-making process. There was no evidence that Lab Charter caused a deprivation of educational benefit. Accordingly, Parent did not meet her burden of proof and any claims for a denial of FAPE must be denied.

**The Child Find Requirement and FAPE**

46.     Under the IDEA, "schools must (1) identify children in need of special education services (Child Find); and (2) provide a [free appropriate public education ("FAPE")] to disabled students." *D.K. v. Abington School District*, 696 F.3d 233, 244 (3d Cir. 2012).

47.     To hold a school liable for violations of the IDEA, a student must typically show that the school violated both its Child Find and FAPE obligations to be held liable under the IDEA, i.e. there can be no IDEA violation without specific substantive harm to the student's education. *See, e.g., C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (*citing Bd. of Educ. of Hendrick Hudson Ctrl. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982); *Knable ex*

*rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir 2001)); *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565-66 (3d Cir. 2010).

48.     To comply with the IDEA's "child find" requirements, schools "must promptly identify [sic] disabled students 'who are in need of special education.'" *Northfield City Bd. of Educ. v. K.S., on behalf of L.S.*, 847 Fed.Appx. 130, 133 (3d Cir. 2021) (*quoting* 20 U.S.C. § 1412(a)(3)(A)). After the school is put on notice of a student's potential disability, it must evaluate that student "within a reasonable time." *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d at 272.

49.     "But some disabilities are hard to diagnose. So, the school's actions need only be reasonably based on what it knew at the time – they "need not rush to judgment." *Northfield*, 847 Fed. Appx. at 133; *D.K.*, 696 F.3d at 252.

50.     Instead, they can and should "take intermediate steps 'en route to eventually finding a disability.'" *Northfield*, 847 Fed. Appx. at 133 (*citing D.K.*, 696 F.3d at 252).

51.     Once a school determines a child requires special education, the IDEA requires that the school provide them with FAPE: "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188-89.

52.     The "educational program [must be] reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 403 (2017).

53.     When a Hearing officer evaluates a student's educational program, it may not rely on hindsight to second-guess it. Rather, it must rely on the information available to the school at the time the program was developed. *K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2019).

54.     Moreover, schools are not required to provide the best education possible.to disabled students, but rather must simply provide the basic floor of educational opportunity. *Ridley Sch. Dist. v. M.R. And J.R. ex rel. E.R.*, 680 F.3d 260 (3d Cir. 2012); *D.S.*, 602 F.3d at 260; *Mary Courtney T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 251 (3d Cir. 2009).

55.     The program must only be reasonable; it need not be ideal. *KD by Dunn*, 904 F.3d at 249. Indeed, the Third Circuit has explicitly ruled that "so long as [the student's education] responds to the needs [of the student], its ultimate success or failure cannot retroactively render it inappropriate." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 534 (3d Cir. 1995) (emphasis added).

56.     A Hearing Officer may, however, use evidence of educational progress as evidence that the education provided to the student was appropriate. *See Katheryn F. v. West Chester Area Sch. Dis.*, 2013 WL 6667773 (E.D. Pa. Dec. 18, 2013).

**Procedural and Substantive Violations of IDEA**

57.     A school's violations of the IDEA can be procedural or substantive. A procedural violation occurs when a school fails to comply with the IDEA's process-based requirements and timelines.

58.      Whereas a substantive violation occurs when the substantive content, such as the educational programming or the IEP, is insufficient and doesn't provide the student with FAPE.

**Procedural Violations**

59.     A procedural violation occurs when a district fails to abide by the IDEA's process-based requirements, procedural safeguards, and timeline requirements and is not a per se denial of FAPE; it is a denial of FAPE only if such violation causes substantial harm to the child or his parents. *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001). Furthermore, a

procedural violation of the IDEA "must actually interfere with a provision of FAPE." *DiBuo v. Bd. of Educ.,* 309 F.3d 184, 190 (4th Cir.2002).

60.     "The remedy of compensatory education is available only where a student's substantive rights are affected by a school district's noncompliance with the IDEA." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012).

61.     Substantial harm can only be found where the preponderance of the evidence in the record indicates that the procedural inadequacies alleged by the student: (1) impeded the student's right to FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of FAPE to the parent's child; or (3) caused a deprivation of educational benefit. 34 C.F.R. § 300.513(a)(2); *see also Rodrigues v. Fort Lee Bd. of Educ.*, 458 Fed.Appx. 124, 127 (3d Cir. 2011) (finding a lack of measurable goals in an IEP was a procedural error that did not affect the student's substantive rights or deny a FAPE where the student was mainstreamed and progress was measured by grades and state proficiency assessments; the court found no IDEA violation); *N.M. ex rel. M.M. v. Sch. Dist. of Philadelphia*, 394 Fed.Appx. 920, 923 (3d Cir. 2010) (finding that IEP lacking annual goals relating to student's needs stemming from his disability was not a procedural flaw giving rise to a substantive harm because the school still provided FAPE).

62.     Where, as here, a school provides additional educational services during a reasonable evaluation period, and the student's academic performance continues to improve there is no basis for finding a denial of FAPE. *See, e.g., J.M. v. Summit Bd. of Educ.*, 2020 WL 6281719, at *10-11 (E.D. Pa. Oct. 27, 2020); *D.K.*, 696 F.3d at 252 (school did not fail to identify student as disabled when it offered him additional educational services "en route to eventually finding a disability"); *Ridley Sch. Dist.*, 680 F.3d at 272 (affirming administrative decision that there was no child find violation when the school "address[ed] [the student's] needs and provid[ed] appropriate instruction and interventions before rushing to special education identification"); *Robinson v. Council Rock Sch. Dist.*, 2006 WL 1983180, at *6 (E.D. Pa. July 12, 2006) (school district did not violate IDEA by not providing more expansive accommodations where standardized test scores indicated student was receiving meaningful educational benefit); *see also Jaffess v. Council Rock Sch. Dist.*, 2006 WL 3097939, at *7 (E.D. Pa. Oct. 26, 2006) ("even assuming [the student] suffers some level of learning disability, the evidence fails to establish that such disability interferes [the student's] ability to benefit meaningfully from an educational program without [specially designed instruction]").

## Substantive Violations

63.     A substantive violation occurs when the substantive content, such as the educational programming or the IEP, is insufficient and doesn't provide the student with FAPE, or when programming is not "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," *Endrew F. ex rel Joseph F. v. Douglas Cty. Sch. Dist.* RE-1, 137 S. Ct. 1001 (2017).

64.     The IDEA does not guarantee "the absolute best" or a "potential-maximizing" education, only that the student is provided with a meaningful educational benefit. *Fuhrmann on Behalf of Fuhrmann v. East Hanover Bd. Of Educ.*, 993 F.2d 1031, 1043 (3d Cir. 1993) (recognizing

that IDEA does not entitle a child to the best education available, but only one reasonably calculated to provide him or her with a meaningful educational benefit). Therefore, as *Endrew and Rowley* make clear, the proposed programming must respond to the child's unique educational needs and individual circumstances. See 20 U.S.C. §1414(d); 34 C.F.R. §300.324.

65.     An award of compensatory education is only appropriate where a student's substantive rights are affected by a school's non-compliance with the IDEA. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012). The failure to adhere to the procedural timeline for developing an IEP or making a firm offer of FAPE is not a substantive violation of the IDEA. *Z.Z. v. Pittsburgh Pub. Sch. Dist.*, No. 311 C.D. 2016, 2016 WL 6994971, at *6 (Pa. Commw. Ct. Nov. 30, 2016).

66.     Additionally, where a student's report cards "indicated intermittent progress and even academic success in several areas," the Third Circuit found no substantive violation. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 251 (3d Cir. 2012).

67.     Here, the Parent failed to produce any evidence to support their contention that Lab Charter substantively violated IDEA in a way that prevented the Student from receiving meaningful educational benefit. Parent's attorney makes the argument that her son was denied FAPE only on the basis of procedural errors made by Lab Charter.

68.     Parent nor Parent's Attorney did not establish by a preponderance of the evidence that Lab Charter caused substantive harm to the Student or his Parent.

69.     Lab Charter properly and thoroughly evaluated the Student and provided FAPE via an IEP each year of the Student's matriculation.

70.     The IEP goals and SDIs reflected the results of the evaluations, and the IEP included multiple goals to address math computation, phonics and word recognition, social and emotional skills, occupational therapy needs, and speech and language development.

71.     Lab Charter utilizes a Multi-Tiered System of Support (MTSS) approach throughout the school to address both academic and behavior concerns. The MTSS program is implemented school-wide and all students are part of the Tier 1 support system. Students with more significant support needs move into Tier 2, and eventually into Tier 3, if needed.

72.     Students are monitored for six to eight weeks before determining whether they should begin receiving additional support in another Tier.

73.     Lab Charter also had an instructional aid in all of the Students's classroom to assist with instruction, help keep him on task, and accompany him on breaks as needed. In addition to the support offered throughout his third-grade year, during his fourth-grade year, the School provided

learning support services for both reading and math and implemented a safety plan to address problematic behaviors.

74.    Furthermore, in order to address the Students's potential regression, Lab Charter offered ESY services to him, but his Parent declined transportation services and he did not attend the program. Lab Charter also utilizes restorative practices (RP) to address behaviors. RP is an approach that focuses on proactively building positive relationships and community within the school setting. Kristina Hulverson & Shaila Mulholland, *Restorative Practices and the Integration of Social Emotional Learning as a Path to Positive School Climates*, 11 J. of Res. in Innovative Teaching and Learning, 110, 1 (2018).

75.    Lab Charter implements the RP model on a school-wide basis, the cornerstone of this model is a focus on social emotional learning to manage emotions and establish positive goals to encourage all students to make responsible decisions. *Id*.

76.    Lab Charter employed these practices to support the student in a holistic way and provide social emotional, behavioral, and academic support.

77.    The Parent failed to produce any evidence or proof to support their contention that Lab Charter failed to provide FAPE as it pertained to the Students' behavioral challenges.

78.    The Parent did not specifically address distinct incidents or instances of the Students's poor behavior; Parent only made broad assertions about her concerns regarding behavior.

79.    Nowhere in the exhibits or testimony did the Parent reference specific dates or occasions in which behaviors occurred, nor did she produce any kind of behavior log or tracking record indicating that appropriate attention to the Students's behavior was not made.

80.    Accordingly, any claims related to Lab Charter's failure to address 's behavioral and social/emotional needs had to be denied.

81.    The record is clear in showing that Lab Charter adequately and appropriately provided programming for the Student to address both academic and behavior concerns.

82.    Parent has failed to produce any evidence or documentation of the School's violation of the IDEA or a failure to provide a FAPE.

83.    All Testimony and exhibits prove that the Student was achieving satisfactory grades in each applicable school year, and Lab Charter continued to provide programming that resulted in an upward trend in ALL's overall success.

**Compensatory Education[2]**

84.    In *B.C.ex rel.,* the Commonwealth Court of Pennsylvania was persuaded by the Ninth and D.C. Circuits' standard "as it tailors the equitable award of compensatory education to the particular student's needs. *Id.* at 650. The court held that only where a student is denied a FAPE and an award of compensatory education is appropriate, "the student is entitled to an amount of compensatory education reasonably calculated to bring him to the position that he would have occupied but for the school district's failure to provide a FAPE. *Brownsville Area Sch. Dist. V. Student X,* 729 A.2d 198 (Pa.Cmwlth.1999).

85.    "[C]ompenstory education purpose is to fairly compensate the student whose school district has failed to provide the student a free appropriate public education." *Id.* at 200. In *M.C. v. Central Regional School District,* 81 F.3d 389 (3d Cir.1996), the court held that "a disabled child is entitled to compensatory education for a period equal to the period of deprivation.

86.    However, compensatory education is an equitable remedy, and, hence, discretionary, award, which gives flexibility in tailoring a particularized award based on the facts

---

[2] The following discussion of compensatory education is asserted to guide the Hearing Officer's final opinion only if FAPE is found to have been denied. Since it is asserted that the School provided FAPE, this section of the submission can be disregarded if the Hearing Officer agrees with the School's position.

and equities of the case. *See Parents of Student W v. Puyallup Sch. Dist., No. 3,* 31 F.3d 1489,

1497 (9th Cir.1994)(no obligation to provide a day-for-day compensation for time missed.

87.     Appropriate relief is relief designed to ensure that the student is appropriately

educated within the meaning of the IDEA). *See also Reid v. District of Columbia,* 401 F.3d 516

(D.C.Cir.2005), the court rejected a "mechanical calculation" of a compensatory education,

award. *Id.* at 518. Specifically, the court stated:

> [C]ompensatory education, is not a contractual remedy, but an equitable
> remedy, part of the court's resources in crafting 'appropriate relief.' " More
> specifically, as the Fourth Circuit has explained, "[c]ompensatory education,
> involves discretionary, prospective, injunctive relief crafted by a court to
> remedy what might be termed an educational deficit created by an educational
> agency's failure over a given period of time to provide a FAPE to a student."
> Overlooking this equitable focus, the [student's] hour-for-hour formula in
> effect treats compensatory education as a form of damages—a charge on
> school districts equal to expenditures they should have made previously. Yet
> "[t]he essence of equity jurisdiction" is "to do equity and to mold each decree
> to the necessities of the particular case. Flexibility rather than rigidity has
> distinguished it.

*Id.* at 523–24 (citations omitted).

88.     As the Third Circuit has articulated, compensatory education is an equitable remedy

designed to replace the educational services a disabled child should have received pursuant to a

FAPE, *see Lester H. v. Gilhool,* 916 F.2d 865, 873 (3d Cir.1990), and must therefore "aim to

place [the] disabled [student] in the same position [she] would have occupied but for the school

district's violations of [the] IDEA," *Ferren C. v. School Dist. Of Phila.,* 612 F.3d 712, 717 (3d

Cir.2010). A simply mechanical one-for-one approach would fall short of achieving this goal.

89.     Moreover, an award of compensatory education should be based on the amount of

services necessary to provide the same qualitative educational benefit the student would have

received during the period of deprivation absent the school district's deficiencies. *Heather D. v.*

*Northampton Area Sch. Dist.,* 511 F.Supp.2d 549, 557–59 (E.D.Pa.2007) ((stating that an

award of a full year of compensatory education for each year at issue was not warranted
because the student's needs did not pervade her entire school day).

90.     In *M.C. v. Central Regional School District,* 81 F.3d 389 (3d Cir.1996), the Third
Circuit held that "a disabled child is entitled to compensatory education for a period equal to the
period of deprivation, but excluding the time reasonably required for the school district to rectify
the problem." *Id.* at 397. Some courts have interpreted this language as requiring full days
compensatory education for the period of deprivation, as Plaintiffs suggest. *See, e.g., Central
Sch. Dist. V. K.C.,* Civ. No. 11–6869, 2013 WL 3367484, *11 (E.D.Pa. July 3, 2013) (referring
to this standard as an "hour-for-hour replacement for the period of deprivation" or a "cookie-
cutter approach"); *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 523
(D.C.Cir.2005) (finding that the Third Circuit's "cookie-cutter approach" presumes that "each
hour without a FAPE entitles the student to one hour of compensatory education"); *B.C. ex rel.
J.C. v. Penn Manor Sch. Dist.,* 906 A.2d 642, 649 (Pa.Commw.Ct.2006) (stating that "the Third
Circuit awards compensatory education solely on the basis of the actual time a student was
deprived of a FAPE, without further analysis").

91.     Indeed, numerous courts within this circuit have merely cited the *M.C.* court's
language and awarded full days compensatory education for the period of deprivation with little, if
any, additional consideration. *See, e.g., Damian J.,* 2008 WL 191176 at *7 (declining to parse out
the exact number of hours the student was not benefitted by an IEP and instead awarding full days
compensatory education); *Lauren P. ex rel. David P. v. Wissahickon Sch. Dist.,* Civ. No. 05–
5196, 2007 WL 1810671, *4 (E.D.Pa. Jun. 20,
2007) (awarding full days compensatory education for period of deprivation without other
consideration), *rev'd on other grounds* 310 Fed.Appx. 552 (3d Cir.2009); *606 Keystone,* 438
F.Supp.2d at 525–26 (finding that an award of compensatory education equals the amount of

hours contained within the representative school years); *East Penn Sch. Dist. V. Scott B.,* Civ. No. 97–1989, 1999 WL 178363, *8–9 (E.D.Pa.1999) (awarding full days compensatory education for period student did not have assistive technology less a reasonable amount of time for the district to have procured a suitable laptop and designed a functional plan for the implementation of the technology).

92.     However, other courts have interpreted this language as requiring a more particularized award calculated based upon the quantity of services improperly withheld during the period of deprivation, less the reasonable amount of time in which the school district should have addressed the deficiency. *See, e.g., Breanne C. v. Southern York Cnty. Sch. Dist.,* 732 F.Supp.2d 474, 487–88 (M.D.Pa.2010) (affirming appeals panel's award of one hour of compensatory education per day for the period of deprivation based on a prior IEP under which the student had been making progress); *Neena S. ex rel. Robert S. v. School Dist. Of Phila.,* Civ. No. 05–5404, 2008 WL 5273546, *7 (E.D.Pa. Dec. 19, 2008) (awarding one hour per day for each subject area in which the student lacked meaningful progress during the period of deprivation); *Heather D. v. Northampton Area Sch. Dist.,* 511 F.Supp.2d 549, 557–59 (E.D.Pa.2007) (affirming appeals panel's award of ten hours per week for period of deprivation based on recommendation of neuropsychologist).

93.     In the matter presented, the Student suffered no apparent educational loss and therefore, against Lab Charter is found based on some procedural defect, he is not entitled to receive a compensatory award because he suffered no educational harm or loss.

## CONCLUSION

94.     Based upon the record, including all exhibits and witness testimony, it is respectfully urged that a finding that that was not denied FAPE during his third (2021-2022)

and fourth grade (2022-2023) school years is mandated and any claims for an award of

compensatory education must be denied.

                                        Respectfully submitted,

/s/ *Alan B. Epstein*            Alan B. Epstein, Esquire
                                    (Pa. I.D. No. 2346)
                  Adam Filbert, Esquire
                                    (Pa. I.D. No. 330960)
                  SPECTOR GADON ROSEN VINCI, P.C.
                                    1635 Market Street, Seventh Floor
Philadelphia, PA 19103
(215) 241-8832/(215) 241-8917

                        aepstein@sgrvlaw.com
                        afilbert@sgrvlaw.com

                        *Attorneys for Appellant*
                            *Laboratory Charter School*