IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LABORATORY CHARTER SCHOOL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 24-5039 |
| | : | |
| **A.L.L., A.L.** | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                                                                     **June 12, 2025**

      This is an IDEA appeal. The student and parent prevailed before the administrative hearing officer. The school, Lab Charter, filed its notice of appeal 91 days after the date printed on the decision. The student and parent therefore ask us to dismiss Lab Charter's complaint because the statute says that the "party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action." 20 U.S.C. § 1415(i)(2)(B). Not so fast. The hearing officer failed to email the decision to the parties on the day she finished the decision. She sent it the next day. And that day, Lab Charter says, is the real "date of the decision of the hearing officer." Or, at a minimum, we should exercise our discretion to equitably toll the deadline. Despite Lab Charter's best efforts to convince us otherwise, we read § 1415(i)(2)(B) to require filing within 90 days of the date of the decision, not the date that the decision was sent to or received by the parties. That is, after all, what it says. Lab Charter's complaint is untimely, and the circumstances do not justify equitable tolling. We grant defendants' motion to dismiss Lab Charter's complaint.

1

I.  BACKGROUND

Laboratory Charter School, the plaintiff, appeals a hearing officer's ruling in favor of A.L.L. and his parent, the defendants, after an education due process hearing. A.L.L. had been a student at Lab Charter, where he qualified for special education services. DI 5 ¶¶ 1, 10.[1] On January 30, 2024, defendants filed a due process complaint against Lab Charter claiming that it had failed to provide A.L.L. with a Free and Appropriate Education (FAPE) under the Individuals with Disabilities Education Act (IDEA). *Id.* ¶ 1.

A hearing officer from the Pennsylvania Office of Dispute Resolution conducted a two-day administrative hearing on April 8, 2024 and May 2, 2024. *Id.* ¶ 2; DI 5 at 21. In a final decision dated June 21, 2024, the hearing officer determined that Lab Charter violated A.L.L.'s right to a FAPE during the 2021-2022 and 2022-2023 school years. DI 5 ¶ 3; *see* DI 5 at 46. The hearing officer emailed the decision to the parties one day later, on June 22. DI 5 ¶ 3 n.1; *see* DI 5 at 51. In two subsequent emails to the parties, the hearing officer explained that she had inadvertently failed to "hit the Send icon" and apologized "for emailing the AL Decision a day late." DI 5 at 52-53. Lab Charter filed its complaint appealing the hearing officer's decision on September 20, 2024 — 90 days after the hearing officer emailed the decision but 91 days after the date shown on the decision. DI 1. Lab Charter filed an amended complaint on September 25, 2025. DI 5.

Defendants move under Rule 12(b)(6) to dismiss Lab Charter's complaint as untimely

---

[1] We adopt the pagination supplied by the CM/ECF docketing system. We use the paragraph (¶) symbol to refer to paragraphs in Lab Charter's amended complaint (DI 5).

pursuant to the 90-day limitations period in 20 U.S.C. § 1415(i)(2)(B). DI 13; DI 13-1. Lab Charter responds that its complaint was timely because the 90-day period should be measured from the date the decision was "issued" to the parties; and even if it were untimely, equitable tolling should apply. DI 16-1. It attaches to its response an affidavit from Alan Epstein, Lab Charter's counsel, stating that he understood that the appeal "should be filed within 90 days of the Decision's issuance" and "promptly recorded in [his] litigation calendar" the deadline of September 20, 2024. *Id.* at 71. Defendants reply that the 90-day limit is jurisdictional, and equitable tolling is not warranted. DI 18.[2]

## II.     STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "[W]e accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Klotz v. Celentano Stadtmauer and*

---

[2] Defendants also argue in reply that we should strike or disregard Lab Charter's amended response to the motion to dismiss, which it filed without leave of the court and after the deadline to respond. DI 18 at 1-2; *see* DI 16. Lab Charter should have sought leave of the court prior to amending its response, and we advise it to do so in the future. *See* E.D. Pa. L.R. 7.1(c) ("The Court may . . . permit additional briefs or submissions *if the Court deems them necessary*.") (emphasis added). Nonetheless, disregarding the amended response is not justified in this instance. First, contrary to defendants' assertion that Lab Charter provided no justification, Lab Charter explained in a letter filed on the docket that substitution was necessary because plaintiff's counsel had inadvertently filed an earlier draft of the response and failed to attach exhibits. DI 17 at 1. Consistent with this statement, the original response referred to exhibits that were not attached. *See* DI 15 at 4. And second, whether we consider Lab Charter's original or amended response, the outcome of this motion would be the same.

*Walentowicz LLP*, 991 F.3d 459, 462 (3d Cir. 2021). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). In other words, the statute of limitations bar must be apparent "on the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978). Courts have interpreted the "face of the complaint" to mean the documents a court can properly consider when deciding a motion to dismiss. *See Schmidt*, 770 F.3d at 250 ("We now turn to whether, based only on the documents properly considered at the motion to dismiss stage . . . Schmidt's claims should have been dismissed on statute of limitations grounds."); *see Houser v. Feldman*, 600 F. Supp. 3d 550, 563 (E.D. Pa. 2022) (defining the "face of the complaint"). Such documents include "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record," as well as "documents[s] *integral to or explicitly relied upon* in the complaint." *Schmidt*, 770 F.3d at 249 (internal quotations omitted).

### III.   DISCUSSION

**A.  Lab Charter's Complaint Was Untimely.**

Under the IDEA, states receiving federal funds must follow certain procedures to safeguard the rights of students with disabilities. *See* 20 U.S.C. § 1400 *et seq*. When there is a

dispute between parents and a school over a child's education, the parties have the right to an impartial due process hearing.  20 U.S.C. § 1415(f)(1)(A).  In Pennsylvania, the Office of Dispute Resolution appoints an impartial hearing officer to oversee and conduct the hearing.  *See* 22 Pa. Code § 14.162.  Pursuant to state regulations, "[t]he hearing officer's decision shall be issued within 45 days after the resolution" of the hearing.  22 Pa. Code § 14.162(q)(2).  The IDEA grants any party "aggrieved" by the hearing officer's decision the right to file a civil action in federal court.  20 U.S.C. § 1415 (i)(2)(A).  The "limitation" provision in § 1415(i)(2)(B) states that "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such an action . . . in such time as the State law allows."  *See also* 34 C.F.R. § 300.516(b).

    Here, the hearing officer dated the decision June 21, 2024 but emailed it to the parties on June 22, 2024.  DI 5 at 20, 51-53.  Lab Charter claims that the operative "date of the decision" in § 1415(i)(2)(B) is the date that the decision was "issued" to the parties, and not the date identified on the decision itself.  DI 16-1 at 7.  We disagree.

    The plain language of § 1415(i)(2)(B) refers to the "date of the decision," not the "issuance date" or "date of receipt."  The decision itself repeats the statutory terminology; on the first and last pages, it clearly states that the "date of decision" is June 21, 2024.  DI 5 at 20, 48.  It is not a rare concept in law that a document may be dated, sent, and received on different dates.  We read "date of the decision" in the statute to mean the "date of decision" identified on the decision itself.

    Pennsylvania Code § 14.162(q)(2) does not demand otherwise.  Lab Charter argues that

the state regulation concerning when a hearing officer must "issue" a decision should dictate the meaning of "date of the decision" in § 1415(i)(2)(B). DI 16-1 at 7. The limitation provision in § 1415(i)(2)(B) defers to a state's "explicit time limitation for bringing [a civil] action" but says nothing about the state hearing officer's timeline for issuing a decision. And vice versa, Pennsylvania Code § 14.162(q)(2) provides that "[t]he hearing officer's decision shall be issued within 45 days after the resolution" but says nothing about a party's timeline for bringing a civil action. Lab Charter conflates two provisions — one a state regulation and one a federal statute — that govern separate actors and separate acts.

In cases where a decision was decided and sent to the parties on different dates, courts have repeatedly relied on the former date as the "date of the decision." *See Wall Twp. Bd. of Educ. v. C.M.*, 534 F. Supp. 2d 487, 492 (D.N.J. 2008) (where decision was "decided" on May 9 but mailed to the parties on May 15, finding that the limitations period began to run on May 9); *C.B. v. Argyle Indep. Sch. Dist.*, No. 4:11cv619, 2012 WL 695834, at *3-5 (E.D. Tex. Feb. 7, 2012) (limitations period began to run when hearing officer "rendered" the decision on May 6, even though the transmittal letter was dated May 27 and plaintiffs received the decision on June 27-28), *report and recommendation adopted*, 2012 WL 695833 (E.D. Tex. March 1, 2012); *see also R.P. v. District of Columbia*, 474 F. Supp. 2d 152, 153 (D.D.C. 2007) ("By its own language, Section 1415 requires a party to act within ninety days from the date of the HOD and is not dependent on receipt or service of that decision."); *Smith v. District of Columbia*, 496 F.

6

Supp. 2d 125, 128 (D.D.C. 2007) (same).[3]

Given the plain language of the statute, we adopt the same approach here. As evidenced by the decision attached to Lab Charter's complaint, the "date of the decision" under § 1415(i)(2)(B) was June 21, 2024. Lab Charter had until September 19, 2024 to file an appeal. Because Lab Charter filed its complaint on September 20, the complaint is untimely.

### B. Equitable Tolling Does Not Apply.

Having decided that Lab Charter's complaint is untimely, we still must consider whether it can proceed under equitable principles. As a preliminary matter, the Third Circuit has not decided whether the limitation provision in § 1415(i)(2)(B) is a jurisdictional bar or a traditional statute of limitations. This distinction is important because a jurisdictional time limitation "cannot be modified and non-compliance is an absolute bar," whereas "[t]ime limitations analogous to a statute of limitations are subject to equitable modifications such as tolling." *Miller v. N.J. State Dep't of Corrs.*, 145 F.3d 616, 617-18 (3d Cir. 1998); *see Wall Twp.*, 534 F. Supp. 2d at 491-92. Statutory time limitations are subject to a rebuttable presumption that equitable tolling applies. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95-96 (1990).

---

[3] Furthermore, though courts often refer to the date the decision was "issued" as the date triggering § 1415(i)(2)(B), this fact alone is not dispositive. First, courts often use "issued" to describe the date the decision was finally decided, but not necessarily sent to the parties. *See, e.g.*, *Wall Twp.*, 534 F. Supp. 2d at 492 (stating that "the 90-day time limitation begins to run on the date the . . . hearing officer issues a decision" but relying on the date the ALJ decided the decision (May 9) and not the date the decision was mailed to the parties (May 15)). Second, in cases where the decision is decided and sent to the parties on the same day (which is most), the "issuance date," even as defined by Lab Charter, *see* DI 16-1 at 8, is the same as the date of the decision. In such cases, it would not be incorrect to rely on the "issuance date" (as defined by Lab Charter) as triggering the limitations period. *See, e.g.*, *Smith*, 496 F. Supp. 2d at 128 ("the date of the HOD," and the date the decision was "issued," was October 27).

Defendants make a perfunctory argument that the 90-day limit is jurisdictional but fail to cite any authority. DI 18 at 4.[4]

District courts have taken conflicting positions on this issue. In *Wall Township*, the New Jersey district court examined the plain language of § 1415(i)(2)(B) and found that the "jurisdictional significance" of the 90-day period is "undermined by the later part of the provision, which permits each state to disregard the 90-day time limit and create its own time prescription." 534 F. Supp. 2d at 493. It further noted that § 1415(i)(2)(B) does not use the term "jurisdiction" and is separate from the provision conferring the district court with jurisdiction. *Id.* (citing *Miller*, 145 F.3d at 618). Based on these factors and more, it held that Congress intended for § 1415(i)(2)(B) to be treated as a statute of limitations. *Id.* at 493-94.

Several district courts, including at least one in this district, have adopted *Wall Township*'s rationale. *See Lejeune v. Khepara Charter Sch.*, 327 F. Supp. 3d 785, 794 (E.D. Pa. 2018) (citing *Wall Township* and holding that "the 90-day rule does not implicate the Court's subject-matter jurisdiction"); *Jenkins v. Butts Cnty. Sch. Dist.*, 984 F. Supp. 2d 1368, 1374-75 (M.D. Ga. 2013) (adopting the reasoning of *Wall Township*); *B.R. v. Prosser Sch. Dist.*, No. CV-08-5025, 2010 WL 723782, at *1-2 (E.D. Wash. Feb. 26, 2010) (same); *Ogden ex rel. Ogden v. Granite Sch. Dist.*, No. 22-cv-00331, 2023 WL 2665719, at *4 (D. Utah March 28, 2023) (same). Some, however, have come out the other way. *See Argyle*, 2012 WL 695834, at *5 (concluding that the 90-day limitation is "mandatory and jurisdictional"); *cf. Maynard v. District of*

---

[4] Defendants have not moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. Of course, this does not prevent us from taking up the issue. *See* Fed. R. Civ. P. 12(h)(3).

*Columbia,* 579 F. Supp. 2d 137, 141-42 (D.D.C. 2008) (noting that "[c]ourts in this District have generally treated the IDEA's limitations period as a jurisdictional bar" but declining to reach the issue).

Though we find the reasoning of our sister courts in *Wall Township* and *Lejeune* generally persuasive, we need not decide the issue now. Even if we assume for purposes of this opinion that the 90-day limitation is not jurisdictional, we see no basis to apply equitable tolling. *See K.S. v. Hackensack Bd. of Educ.*, No. 16-2155, 2017 WL 788207, at *5 (D.N.J. March 1, 2017) (assuming without deciding that equitable tolling applies); *L.S. ex rel. E.S. v. Kent Sch. Dist.*, No. 2:22-CV-01793, 2023 WL 7158421, at *4 (W.D. Wash. Oct. 31, 2023) (same).

"[E]quitable tolling is appropriate when principles of equity would make the rigid application of a limitation period unfair, but . . . a court should be sparing in its use of the doctrine." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013); *see also Irwin*, 498 U.S. at 96 ("Federal courts have typically extended equitable relief only sparingly."). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin*, 498 U.S. at 96). The first prong "covers those affairs within the litigant's control," whereas the second "is meant to cover matters outside its control." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257 (2016). "[T]here are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from

9

asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc).

Lab Charter, without citing the above factors, argues that equitable tolling should apply "[i]n light of the clear confusion caused by the hearing officer['s] actions in dating the Decision the day before it was actually issued." DI 16-1 at 10. In his affidavit, Mr. Epstein states that he "remained confident" under his reading of the law that "the issuance date controlled the right to appeal." DI 16-1 at 72. Defendants reply that Lab Charter satisfies neither prong; rather, it "gambled, waited the entire appeal period, and . . . risk[ed] its claims on this Court's acceptance of its statute of limitations theory." DI 18 at 7.

Beginning with the first prong, equitable tolling is justified only when a plaintiff shows that "he or she exercised reasonable diligence in investigating and bringing [the] claims." *Miller*, 145 F.3d at 618-19 (internal quotations omitted). "That is, tolling will never extend to 'a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline.'" *D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (quoting *Holland v. Florida*, 560 U.S. 631, 651-52 (2010)). We have already determined that Mr. Epstein's reading of the law is unsupported by the statutory language and thus incorrect. And outside of its legal assertions, Lab Charter has provided no information about any steps that Mr. Epstein took to research or confirm the limitations deadline — or that Lab Charter otherwise took in pursuit of this action — in the 89 days before it was due. Lab Charter's mistake sounds

in excusable neglect to which equitable tolling does not apply. It has not shown reasonable diligence.

Furthermore, we do not view the hearing officer's delayed transmission of the decision as an extraordinary circumstance. The parties agree that they did not receive the hearing officer's decision until one day after the 45-day deadline outlined in 22 Pa. Code § 14.162(q)(2), which the hearing officer described as an "error." DI 13-1 at 2; DI 16-1 at 4-5; DI 5 at 53; *see* DI 22 at 7:1-4, 19:21-24. But Lab Charter provides no authority for its assertion that such a small delay on the part of a decision-maker constitutes an extraordinary circumstance.[5] And while Lab Charter refers to "confusion" caused by the delay, the hearing officer made it abundantly clear in her emails to the parties that she had "finalized [the decision] on the due date." DI 5 at 53.[6]

---

[5] In *Argyle*, the hearing officer "rendered" the decision on May 6, 2011, but the plaintiffs did not receive it until June 27-28, 2011. 2012 WL 695834, at *3. At the time they received it, they had 37 days left to file an appeal. *Id.* The court did not have occasion to address whether this delay constituted extraordinary circumstances because it ruled that the 90-day limitations period was "mandatory and jurisdictional." *Id.* at *5. The same goes for *R.P.*, where the district court dismissed a complaint filed one day late for lack of jurisdiction, even though the decision was "issued in the absence of the parties." 474 F. Supp. 2d at 152-54. In *Wall Township*, where the hearing officer's decision was mailed to the parties six days after it was decided, the court left open but did not decide whether equitable tolling applied. 534 F. Supp. 2d at 489, 494.

[6] Mr. Epstein's mistake of law also does not create an extraordinary circumstance. Attorney errors are usually "attributed to their clients," and thus do not constitute extraordinary circumstances outside of a litigant's control. *See Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999); *cf. Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 89 n.16 (3d Cir. 2013) (in the habeas context, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling" (internal quotations omitted)). In the rare case where courts have found it appropriate to toll the statute of limitations due to attorney mistake, the attorney's conduct was much more "extraordinary" than what occurred here. In *Seitzinger*, for example, the attorney affirmatively lied to his client by telling her that he had filed the complaint, when in fact he had not. 165 F.3d at 241; *see also Holland*, 560 U.S. at 652-53.

Most importantly, even with the hearing officer's mistake, Lab Charter still had *89 days* to seek clarification and file an appeal. Thus, these were not circumstances in which Lab Charter was "prevented" from asserting its rights.[7] *See Oshiver*, 38 F.3d at 1387.

We will grant defendants' motion to dismiss Lab Charter's complaint. Because the complaint is untimely, leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Therefore, Lab Charter's complaint is dismissed with prejudice.[8]

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. An appropriate order follows.

---

[7] At oral argument, Lab Charter argued that defendants were not prejudiced by their late filing. DI 22 at 24:4-5. The absence of prejudice "is not an independent basis for invoking the doctrine [of equitable tolling]" and is only to be considered "*once a factor that might justify such tolling is justified*." *Menominee*, 577 U.S. at 259 n.5 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). We have not identified such a factor here. We question, however, whether prejudice was in fact absent. Lab Charter represented at oral argument that it decided to file its complaint only after seeing defendants' complaint seeking attorney's fees, which was filed on the correct deadline of September 19, 2024. DI 22 at 22:3-15. It appears that Lab Charter gained a tactical advantage by having an extra day to prepare its complaint.

[8] Lab Charter asks that we permit it to "file a Second Amended Complaint to assert a Counterclaim." DI 16-1 at 4. Should Lab Charter wish to amend its answer to the complaint in *L.L. et al. v. Lab'y Charter Sch.*, 24cv4998, to add a counterclaim, it can file a motion to do so on the appropriate docket. The motion will be considered.